# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2430

_____

United States of America,      *
     *
      Plaintiff - Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the District of
     *    Nebraska
Jose Soto,      *
     *
      Defendant - Appellant.      *

_____

Submitted: February 13, 2006
Filed: June 1, 2006

_____

Before RILEY, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jose Soto appeals his sentence of 120 months of imprisonment for one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and one count of criminal forfeiture. Soto argues that he was entitled to a safety-valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G § 5C1.2(a). We affirm.

On July 22, 2004, a grand jury issued an indictment charging Soto and four co-defendants with drug and firearm offenses. Thereafter, Soto entered into a plea agreement with the government. Soto agreed to be held responsible for at least 500 grams, but less than 1.5 kilograms, of methamphetamine. Soto stipulated that his Base Offense Level was 32. Soto agreed to plead guilty to two of the counts in the indictment, and the government agreed to make a motion to dismiss another count in the indictment.

Soto pled guilty before the district court[1] on December 6, 2004. The district court ordered a presentence investigation report (PSR). A revised PSR recommended a Base Offense Level of 36 and a three-level reduction for acceptance of responsibility yielding a Total Offense Level of 33. The revised PSR listed Soto as having a Category I Criminal History with a resulting Guidelines range of 135-168 months imprisonment.

Prior to sentencing, the district court accepted the stipulation of the Base Offense Level of 32, and, consequently, did not accept the recommendation of the revised PSR. The district court also deducted three levels for acceptance of responsibility yielding a Total Offense Level of 29.

Soto believed that he was entitled to safety-valve relief under the Sentencing Guidelines due to his two proffer interviews in December 2004. Soto attempted to reach an agreement with the government about safety-valve relief, but the two parties did not reach an agreement before Soto's sentencing.

---

[1] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

At sentencing, on May 9, 2005, the district court accepted the plea agreement between Soto and the government. With a Total Offense Level of 29 and a Criminal History Category I, the district court determined that a Guidelines sentencing range of 87-108 months was appropriate. The statutory mandatory minimum of 120 months was greater than the range determined by the district court based on Soto's offense level and criminal history. Pursuant to § 5G1.1(b), the Guidelines sentence thus became 120 months imprisonment.

The district court denied safety-valve relief for Soto because he had not met the statutory requirements to prove his eligibility. Specifically, the district court found that Soto was neither completely truthful in his statements about his role in the offenses nor about his conduct relevant to that offense. Consequently, the district court sentenced Soto to 120 months imprisonment.

## II.

Soto had the burden to prove that he qualified for a safety-valve sentencing reduction under 18 U.S.C. § 3553(f)(5) and U.S.S.G § 5C1.2(a). United States v. O'Dell, 204 F.3d 829, 838 (8th Cir. 2000). "We review for clear error a district court's findings as to the completeness and truthfulness of a defendant's safety-valve proffer." United States v. Bolanos, 409 F.3d 1045, 1047 (8th Cir. 2005).

"The 'safety valve' provision permits a district court to impose on a drug defendant a more lenient sentence within the otherwise applicable guidelines range if certain conditions are met." O'Dell, 204 F.3d at 838. In order to qualify for safety-valve relief, a defendant must show, by a preponderance of the evidence, that:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

The district court found that Soto had failed to satisfy the fifth prong of the safety-valve requirements. The district court found that Soto gave neither truthful and complete information regarding the offense for which he pled guilty nor truthful and complete information about his relevant conduct.

A defendant is not entitled to safety-valve relief when he or she just conveys the "basic facts of his [or her] crime." United States v. Alarcon-Garcia, 327 F.3d 719, 723 (8th Cir. 2003). A defendant must prove "through affirmative conduct, that he [or she] gave the Government truthful information and evidence about the relevant crimes before sentencing." United States v. Romo, 81 F.3d 84, 85-86 (8th Cir. 1996). "In making its assessment of the truthfulness of a safety valve proffer, the district

court is entitled to draw reasonable inferences from the evidence." United States v. Alvarado-Rivera 412 F.3d 942, 948 (8th Cir. 2005) (en banc).

In this case, Soto offers his two December 2004 proffers to argue that he was eligible for safety-valve relief. However, there are several reasons those proffers do not meet the requirements of the fifth prong of 18 U.S.C. § 3553(f). In the two proffers, Soto claimed to have had a minimal role in the drug conspiracy. Soto's story about his role contradicted the interviews of the other co-defendants in the case. Soto's account was also less detailed than those of his co-defendants. There were also numerous discrepancies between the interviews of the co-defendants and Soto about specific factual events.

The district court found that Soto had not been completely truthful and forthcoming in his proffers. One particular claim by Soto illustrates the district court's grounds for questioning the veracity of Soto's proffers. Soto asserted that the first day he met co-defendant Richard Garza at the Maple Street bar was the day of Soto's arrest. While waiting to place an order with another co-defendant, Sergio Martinez-Soto, Soto alleges that he first met Garza. Because neither Soto nor Martinez-Soto spoke English, Soto alleges that they asked Garza to place an order for them. It was at this time that Soto alleged that he first spoke with Garza about drugs. Based upon this chance meeting, Soto alleged that Garza immediately trusted Soto and Martinez-Soto, accompanied Soto and Martinez-Soto to a drug buyer's home, and entrusted Soto and Martinez-Soto to hold drugs and money for Garza. This account by Soto strains credulity. Not surprisingly, Soto's story was inconsistent with Garza and Martinez-Soto's interviews regarding the same meeting.

The proffers of all of the other co-defendants show a larger role for Soto than he attributed to himself in his own proffer. There were also statements in Garza's proffer which connected Soto to the firearm in the case. Specifically, Garza alleged that Soto was the one who purchased the gun. Soto denied any such connection. The

district court found that Soto's proffered testimony was not sufficiently credible to meet Soto's burden for receiving safety-valve relief. We generally do not disturb such a credibility finding by a district court. See United States v. Shallal, 410 F.3d 434, 437 (8th Cir. 2005)

Because of the discrepancies with the other interviews in the case, we do not find error with the district court's handling of this issue. It was Soto's burden to prove he qualified for safety-valve relief. Based upon the record before us, we see nothing that would indicate the district court erred in finding Soto had failed to meet that burden.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____